Charles Alex EARLY, Appellant
(Petitioner Below),

v.

STATE of Indiana, Appellee
(Respondent Below).

No. 1181S316.

Supreme Court of Indiana.

Dec. 22, 1982.

Susan K. Carpenter, Public Defender, Paul Levy, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Palmer K. Ward, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Petitioner (Appellant) was convicted of Robbery, Ind.Code § 35–42–5–1 (Burns 1979) and sentenced to fifteen (15) years imprisonment. One issue raised by this appeal from the denial of a petition for post-conviction relief compels us to reverse the judgment of the trial court and to order Petitioner's guilty plea vacated.

On October 5, 1978, Petitioner was charged with Robbery of a fast-food restaurant. He signed a plea bargain agreement with the State and, on April 10, 1979, entered a plea of guilty to the charge. At that time, the trial court examined Petitioner regarding this guilty plea and determined that Petitioner understood his constitutional rights and the charge against him. The guilty plea was then accepted by the court. Petitioner contends that his guilty plea was not knowingly, voluntarily, and intelligently made due to the trial court's failure to comply with Ind.Code § 35–4.1–1–3 (Burns 1979).

Petitioner has the burden of proof and stands in the shoes of one appealing from a negative judgment. I.R.P.C. 1 § 5, *Lamb v. State,* (1975) 263 Ind. 137, 325 N.E.2d 180. The trial judge, as trier of fact, is the sole judge of the weight of the evidence and the credibility of the witnesses. *Rufer v. State,* (1980) Ind., 413 N.E.2d 880, 882. It is only where the evidence is without conflict and leads to but one conclusion, and the trial court has reached an

opposite conclusion, that the decision will be disturbed as being contrary to law. *Walker v. State,* (1978) 267 Ind. 649, 651, 372 N.E.2d 739, 740.

The plea bargain agreement contained a paragraph in which each and every advisement required by subsection (a), (b), and (c) of Ind.Code § 35–4.1–1–3 was set forth, and the petitioner had placed his initials following each stated right, indicating that he understood it.

At the guilty plea hearing, the judge undertook to comply with the requirements of the aforementioned statute, either from notes or memory or perhaps from a copy of the statute. In so doing, he, unfortunately, failed to advise Petitioner of his right to have compulsory process for obtaining witnesses; and it is his contention that under the mandatory wording of the statute and our holding in *German v. State,* (1981) Ind., 428 N.E.2d 234 (C.J. Givan and J. Pivarnik dissenting) it cannot be said that his guilty plea was made knowingly and intelligently.

The State counters that, without regard to the deficiency in the advisements, the petitioner was aware of such rights, as evidenced by his acknowledgment in the plea bargain agreement, which agreement was before the Court.

The case, therefore, resembles both *German, supra,* and *Clark v. State,* (1978) 270 Ind. 104, 383 N.E.2d 321. In *Clark* and *German* the appellants had executed plea agreements whereby they acknowledged their rights as enumerated therein. We affirmed in *Clark,* notwithstanding that the judge who had taken the guilty plea had failed to advise the appellant of his right to compulsory process. However, it there appeared that the plea agreement was before the Court and that the judge, through extensive questioning with respect to it, had determined that the appellant did understand all of his rights and did voluntarily waive them.

The circumstances of the plea hearing in the case before us are quite similar to those of *Clark,* but an essential link is missing. Although the plea agreement was before the court, in interrogating and advising the

petitioner, the judge made no references to any of its terms, separately or collectively, to determine whether or not Petitioner knew and understood its contents. There is nothing in the record, other than the written plea agreement itself, from which the trial court could have determined that Petitioner knew of his right to compulsory process, and we clearly held in *German,* that a term of the written plea agreement may not be considered an adequate substitute for the personal advisement required by the statute.

Although we will not hold the plea hearing judge to particular language in carrying out the mandate of the statute, if its simple language is utilized, together with simple questions, to ascertain that the defendant does, in fact, understand the meaning of each advisement and simple explanations, when necessary, defendants who plead guilty will not only be fully advised and competent to plead, but the record will also clearly reflect as much; and judicial time and effort can be conserved.

■ Although the plea bargain agreement in the instant case reflects that the petitioner understood the rights therein enumerated, including the right to compulsory process, it did not come from the judge, and it did not come at the time of the waiver. In order for rights to be voluntarily waived, they must be known and understood *at the time of the waiver.* The waiver occurs simultaneously with the guilty plea; hence the judge must ascertain, *and the record must reflect,* that the defendant understands his rights and the effect of a guilty plea *at that very moment.* That is the critical time. What he knew or did not know at prior times, including the time when he signed the plea agreement, is immaterial except insofar as it may be an aid to the hearing judge and to us in determining what he comprehended and understood at the time the plea is given.

Although we are aware that the petitioner probably understood the one right which the guilty plea hearing judge inadvertently

omitted from his advisements, the record discloses that no advisement thereon was given, either directly or by reference to the plea agreement contents, at the time the plea was taken. The conclusion of the post conviction hearing judge that the petitioner had been adequately advised at the guilty plea hearing and knowingly, intelligently and voluntarily entered his plea of guilty is not supported by any evidence and is contrary to the evidence. The judgment denying relief to the petitioner is, therefore, contrary to law, is ordered reversed; and the cause is remanded with instructions to vacate Petitioner's guilty plea.

DeBRULER, J., concurs.

HUNTER, J., concurring in part, dissenting in part and concurring in result with opinion.

PIVARNIK, J., dissents with opinion in which GIVAN, C.J., concurs.

PIVARNIK, Justice, dissenting.

I must respectfully dissent from the majority opinion for the reasons stated in Chief Justice Givan's dissent in *German v. State*, (1981) Ind., 428 N.E.2d 234, which I joined. We are certainly straining logic and our knowledge of human behavior to say that a person did not know and understand what he was doing in making voluntary waivers while entering a guilty plea when he knew and understood those things at the time he entered a written plea agreement, and that written plea agreement is placed in the record at the time of the guilty plea in open court. In *North Carolina v. Alford*, (1970) 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162, the United States Supreme Court enunciated the standard for determining validity of guilty pleas pursuant to their decision in *Boykin v. Alabama*, (1969) 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274. In *Alford*, the Supreme Court said: "The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." 400 U.S. at 31, 91 S.Ct. at 164, 27 L.Ed.2d at 168.

Here we have a post-conviction relief petition under I.R.P.C. 1, § 5, where the petitioner has the burden of proof and stands in the shoes of one appealing from a negative judgment. As the majority states:

"[T]he trial judge, as trier of fact, is the sole judge of the weight of the evidence and the credibility of witnesses. *Rufer v. State*, (1980) Ind., 413 N.E.2d 880, 882. It is only where the evidence is without conflict and leads to but one conclusion and the trial court has reached an opposite conclusion, that the decision will be disturbed as being contrary to law. *Walker v. State*, (1978) 267 Ind. 649, 651, 372 N.E.2d 739, 740."

Here, we again have a situation such as that in *German, supra, Williams v. State*, (1977) 266 Ind. 373, 363 N.E.2d 971, and *Clark v. State*, (1978) 270 Ind. 104, 383 N.E.2d 321, wherein the defendant has entered into a written plea agreement with the State, agreeing to take a conviction for a certain crime, agreeing to take a certain amount of punishment for that crime, subject to approval by the court only, and acknowledging therein that he understands all of his rights enumerated in the plea agreement, and freely, voluntarily, and knowingly waives all of those rights. The majority recognizes that the plea bargain agreement of defendant Early contained a paragraph in which each and every advisement required by sub-section (a), (b), and (c), of Ind.Code § 35–4.1–1–3 were found, and Early indicated his understanding by placing his initials next to each stated right.

It is my view that when a defendant with the aid of counsel enters into a plea agreement such as this with the State, and joins with the State in presenting this plea agreement to the trial court, virtually asking the judge to approve this agreement and sentence him in the manner designated in that agreement, the defendant has therein expressly waived any and all rights he has to be instructed any further by the judge. It is clear here that the trial judge had this plea agreement before him and examined it and was therefore aware that the defendant had entered into this agree-

ment and acknowledged that he knew and understood everything contained in it, including the waivers of his rights. We are, therefore, engaging in nothing short of legal fictions to say there are grounds for reversing the judgment of the trial judge because he failed to ritualistically utter a certain phrase.

Defendant has made his agreement with the State and the State has kept its part of the bargain. I would require the defendant to do likewise. The trial court should be affirmed.

GIVAN, C.J., concurs.

HUNTER, Justice, concurring in part, dissenting in part, and concurring in result.

I concur in the result reached by the majority; likewise, I concur in part with the rationale upon which post-conviction relief must be granted. The momentous consequences attendant to the entry of a guilty plea render it a "grave and solemn act" to be accepted by the trial court "only with care and discernment." *Brady v. United States*, (1970) 397 U.S. 742, 748, 90 S.Ct. 1463, 1468, 25 L.Ed.2d 747, 756; *see also Boykin v. Alabama*, (1969) 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274; *Stowers v. State*, (1977) 266 Ind. 403, 363 N.E.2d 978. Our legislature recognized the significance attached to a plea of guilt and wisely imposed a statutory duty on the trial court to insure the plea is knowingly and intelligently entered. The statute governing the entry and acceptance of a guilty plea reads:

"Sec. 3. *Defendant to be advised by court. The court shall not accept a plea of guilty from the defendant without first addressing the defendant and*

"(a) *determining* that he understands the nature of the charge against him;

"(b) *informing him* that by his plea of guilty he is admitting the truth of all facts alleged in the indictment or information or to an offense included thereunder and that upon entry of such plea the court shall proceed with judgment and sentence;

"(c) *informing him* that by his plea of guilty he waives his rights to a public

and speedy trial by jury, to face the witnesses against him, to have compulsory process for obtaining witnesses in his favor and to require the state to prove his guilt beyond a reasonable doubt at a trial at which the defendant may not be compelled to testify against himself;

"(d) *informing him* of the maximum possible sentence and minimum sentence for the offense charged and of any possible increased sentence by reason of the fact of a prior conviction or convictions, and of any possibility of the imposition of consecutive sentences;

"(e) *informing him* that the court is not a party to any agreement which may have been made between the prosecutor and the defense and is not bound thereby."

Ind.Code §§ 35-4.1-1-3 (Burns 1979 Repl.); (emphasis added).

This Court has repeatedly emphasized that *strict compliance* with the statute is demanded of our trial courts. *Romine v. State*, (1982) Ind., 431 N.E.2d 780, 782; *German v. State*, (1981) Ind., 428 N.E.2d 234 (Givan, C.J., and Pivarnik, J., dissenting); *Turman v. State*, (1979) Ind., 392 N.E.2d 483. *See also, Bullock v. State*, (1981) Ind. App., 406 N.E.2d 1220; *Barfell v. State*, (1979) Ind.App., 399 N.E.2d 377.

The affirmative statutory duty and "strict compliance" requirement serve three important purposes. First and most obvious, it insures that the defendant is apprised of the consequences his plea entails, including the waiver of the various constitutional rights enumerated in the statute. Second, it insures that the trial court is satisfied that the defendant understands the nature of the rights and is intelligently forsaking them; due to the gravity of the consequences attendant to the plea, it is the trial court, in its role as impartial and detached arbiter, which is suited to make that determination. *Brady v. United States, supra, Boykin v. Alabama, supra; Maleck v. State*, (1976) 265 Ind. 604, 358 N.E.2d 116 (Arterburn, Givan, JJ., dissenting); *Brimhall v. State*, (1972) 258 Ind. 153, 279 N.E.2d

557; *Barfell v. State, supra.* Third, the duty and requirement, once properly discharged, creates a record which objectively reflects the extent of a defendant's knowledge and understanding of his rights and the consequences of the plea *at the time it was entered.* In turn, that record forecloses the initiation of post-conviction proceedings which clog our court dockets and eliminate the dubious and subjective after-the-fact assessment of a defendant's knowledge and understanding at the time the plea was entered and accepted. *Boykin v. State, supra.* The latter concern is of particular significance in light of the rule that every reasonable presumption must be indulged against a waiver of a fundamental constitutional right. *Brimhall v. State, supra; see also, Johnson v. Zerbst,* (1938) 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461.

It is for all these reasons that this Court has so recently reiterated the need for trial courts to strictly comply with Ind.Code § 35–4.1–1–3, *supra. Romine v. State, supra; German v. State, supra.* Likewise, it is these concerns which prompted this Court in *German* to hold that a term contained in a written plea agreement may not "be considered an adequate substitute for a personal advisement of so fundamental a matter as the concept of waiver." *German v. State, supra,* 428 N.E.2d at 237. And it is for these reasons that in *German,* we overruled cases wherein strict compliance had not occurred. There, we stated:

> "*Neely v. State,* (1978) 269 Ind. 588, 382 N.E.2d 714, and other cases, to the extent that they held that the statutory obligation of the trial judge to inform the defendant that a plea of guilty operates as a waiver or surrender of the above enumerated rights may be met by something short of a direct statement to that effect, are overruled." *Id.,* 428 N.E.2d at 238.

At issue before us is the trial court's failure to inform defendant that by his plea of guilt he was waiving his constitutional right to compulsory process—a "vital" and fundamental right. *Shelor v. State,* (1979) 270 Ind. 454, 457, 386 N.E.2d 690, 692. This case thus falls within the purview of *Ger-*

*man v. State, supra,* which involved the failure of the court to advise defendant his plea of guilt entailed a waiver of the rights enumerated in subsection "c" of Ind.Code § 35–4.1–1–3—which include the right of compulsory process.

In various respects, the majority's analysis embodies the rationale of *German v. State, supra,* and that contained within the confines of this dissenting opinion. I expressly concur in the following statements from the majority opinion:

> "There is nothing in the record, other than the written plea agreement itself, from which the trial court could have determined that Petitioner knew of his right to compulsory process, and we clearly held in *German,* that a term of the written plea agreement may not be considered an adequate substitute for the personal advisement required by the statute.
>
> "Although we will not hold the plea hearing judge to particular language in carrying out the mandate of the statute, if its simple language is utilized, together with simple questions, to ascertain that the defendant does, in fact, understand the meaning of each advisement and simple explanations, when necessary, defendants who plead guilty will not only be fully advised and competent to plead, but the record will also clearly reflect as much; and judicial time and effort can be conserved.
>
> "Although the plea bargain agreement in the instant case reflects that the petitioner understood the rights therein enumerated, including the right to compulsory process, it did not come from the judge, and it did not come at the time of the waiver. In order for rights to be voluntarily waived, they must be known and understood *at the time of the waiver.* The waiver occurs simultaneously with the guilty plea; hence the judge must ascertain, *and the record must reflect,* that the defendant understands his rights and the effect of a guilty plea *at that very moment.* That is the critical time. What he knew or did not know at prior

times, including the time when he signed the plea agreement, is immaterial . . . ." *Majority Opinion, supra,* at 1072. [Emphasis original.]

For these reasons, as well as those expressed herein, I concur in the result ultimately reached by the majority.

I do not, however, join the ambiguous indication that what a defendant "knew or did not know at prior times" might be material "as an aid to the hearing judge and to us in determining what he comprehended and understood at the time the plea is given." That language simply defies its context. Nor do I concur in the indication that references to the plea agreement terms, either separately or collectively, might satisfy the requirement of strict compliance enunciated in *Romine, German,* and *Turman.* The majority's suggestion that such reference might be satisfactory is puzzling, for, as per its own rationale and Ind.Code § 35–4.1–1–3, *supra,* each particular advisement of a right must come *from the court.* Whether the advisement includes a reference to the portion of the plea agreement wherein the waiver of rights appears, it yet remains that it is the court that must directly address the defendant, inform him of the various individual rights and the waiver which occurs, and insure that the defendant's plea is knowingly and intelligently entered. For that reason, the majority's statements regarding references to the plea agreement are *non sequiturs.*

For all the reasons expressed herein, I concur in part with the majority opinion, including the result ultimately rendered.

Concurring in part, dissenting in part; and concurring in result.